**180**

R.O. HAHN, INC., Movant,

v.

MDG DIAGNOSTICS, INC., and Louis Kastan, M.D., Respondents.

No. 87–CA–1590–I.

Court of Appeals of Kentucky.

Aug. 14, 1987.

Sharon A. Sullivan, Cincinnati, Ohio, for movant.

Martin R. Snyder, Samuel H. Fritschner, Taustine, Post, Sotsky, Berman, Fineman & Kohn, Louisville, for respondents.

Before CLAYTON, McDONALD and MILLER, JJ.

McDONALD, Judge:

The Court has considered the motion filed by R.O. Hahn, Inc., for relief pursuant to CR 65.07 from the denial of a temporary injunction by the Jefferson Circuit Court. The Court has considered the response filed by MDG Diagnostics, Inc., and Louis Kastan, and heard the oral presentation of counsel. Upon review of all material submitted, the Court ORDERS that the motion for relief under CR 65.07 be GRANTED. Pending a final judgment by the circuit court, the respondents are enjoined from removing, or causing to be removed, from their place of business the load craft vehicle and the trailmobile vehicle, more specifically described by attachments A and B to the Jefferson Circuit Court's restraining order. The bond set by the circuit court shall be continued in effect during this litigation.

When the facts of this case are examined with the guidance of *Oscar Ewing, Inc. v. Melton,* Ky., 309 S.W.2d 760 (1958), and *Maupin v. Stansbury,* Ky.App., 575 S.W.2d 695 (1978), we believe that the circuit court abused its discretion in denying movant's requested temporary injunction.

In ruling on a motion for temporary injunction, the circuit court must consider the effect on the status quo, consider the hardship imposed on the parties by grant or denial of the requested injunction, and determine whether the complaint raises a serious question warranting a trial on the merits.

In this case, the parties have had a supplier-customer relationship for many years. The videotape of hearings held in the circuit court indicate that that relationship has continued past the transaction which is being litigated, until very recent weeks. Indications are that both sides would like for the relationship to continue.

In the transaction which led to this dispute, Hahn sold to MDG two items. The first item was a steel and aluminum box-like shelter, which MDG intended to convert into a diagnostic suite for resale to a third party. The second item was a wheeled trailer capable of carrying such a shelter. It was agreed that at the time of this transaction to the present, Hahn was willing to sell to MDG only on a cash-on-delivery basis.

Hahn delivered the goods to MDG's place of business in Louisville, Kentucky, and intended at that time to deliver the manufacturer's certificates of origin for both vehicles and to be paid. Payment was not available, and Hahn refused to turn over the assigned certificates. However, the shelter and trailer were left at MDG's place of business.

Counsel for MDG stated in circuit court that the trailer involved here has been used by MDG for delivery of outfitted shelters in the normal course of business. It is questionable whether the trailer is properly licensed since MDG has never obtained from Hahn the certificate of origin necessary for obtaining a proper certificate of title and license.

MDG has also proceeded to outfit the shelter left on its premises by Hahn as a diagnostic suite. Medical equipment worth more than $2,000,000 and belonging to a third party has been placed in the shelter together with an undetermined amount of other material necessary for the proper outfitting of a diagnostic suite. It appears that the fully outfitted shelter is now ready for delivery to the third party which supplied the medical equipment.

The value of the shelter and trailer delivered to MDG by Hahn was claimed to be worth between $70,000 and $100,000, according to Hahn's figures, or $40,000 to $60,000, according to MDG's figures. It is agreed that the value of the fully outfitted diagnostic suite, with its medical equipment, is over $2.5 million dollars.

MDG has, admittedly, a serious cash flow problem and has never paid for the equipment. A check from MDG to Hahn representing partial payment for this material and other invoice material was dishonored for insufficient funds. It is alleged that MDG has already dissipated most, if not all, of the funds due to it on resale of the diagnostic suite from the third party.

Hahn continues to regard itself as the owner of the shelter, but appears to be unwilling to initiate an action for possession because of the equipment belonging to a third party placed in the shelter by MDG. MDG regards Hahn as an unsecured creditor with nothing more than a claim for monetary damages for an unsecured debt.

The goods are currently at MDG's place of business in Jefferson County. If Hahn's motion for relief is not granted, the shelter will be removed from this jurisdiction into the custody of a third party. Hahn will be left only with an unsecured claim against MDG. In view of MDG's cash flow problems, Hahn feels that its claim will have little, if any, value.

If Hahn's motion is granted, MDG argues that it will be placed in breach of a multi-million-dollar contract and that its customer, an innocent third party, will suffer. But MDG's customer is not a party to this action, and MDG is the victim of a situation that it has created itself. MDG accepted these goods at its place of business in February of 1986. The parties were then doing business on a cash-on-delivery basis. MDG has not paid for the goods, although it has proceeded to use the trailer (probably without proper licensing), has installed equipment worth more than $2,000,000 in the shelter, and has tendered to Hahn one check which was returned for insufficient funds.

We find that Hahn has shown a sufficient probability of irreparable injury. We further find that the equities of the situation favor the issuance of the temporary injunction. We must now determine whether there is "a serious question warranting a trial on the merits." *Maupin v. Stansbury,* supra, at 699.

The question to be tried is whether Hahn passed title to the shelter and trailer to MDG when the items were left with MDG,

182

contrary to its previous practice of cash on delivery. KRS 355.2–401(2) provides:

> (2) Unless otherwise *explicitly* agreed title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods, despite any reservation of a security interest and even though a document of title is to be delivered at a different time or place; and in particular and despite any reservation of a security interest by the bill of lading. [Emphasis ours.]
>
> . . . .
>
> (b) if the contract requires delivery at destination, title passes on tender there.

Clearly, Hahn completed its performance by delivery of the goods to MDG's place of business in Louisville. However, because of prior problems with MDG's account, Hahn had agreed to sell only on a cash-on-delivery basis. When payment was not forthcoming, Hahn left the goods at the place of delivery, but retained documentation which it viewed as essential to MDG's use of those goods. Under these conditions, it is possible, indeed even probable, that title did not pass to MDG upon delivery of the goods.

As a matter of interest, it is stated in *Stimson's Ex'x v. Tharp*, 284 Ky. 389, 144 S.W.2d 1031 (1940); "The fact of payment or nonpayment of the purchase price has no bearing on the question of title unless payment was a condition to passing title. . . ."

We do not believe the record presented is sufficient for a determination on the issue of the existence of an explicit agreement concerning the passage or retention of title as contemplated by KRS 355.2–401(2). For help in this regard *see* D. Leibson and R. Nowka, *The Uniform Commercial Code of Kentucky* § 2.8(A) (1983, Supplement 1987), and the comments therein on *McKenzie v. Oliver*, Ky.App., 571 S.W.2d 102 (1978). Although respondents urge otherwise, we certainly cannot discern from the circuit court's order a finding which addressed the ultimate question of fact presented. Not having the advantage of testimony concerning the various agents of R.O. Hahn, Inc., and MDG Diagnostics, Inc., in the course of the negotiations for the sale and delivery of these goods, and based upon the affidavits submitted by the parties and the testimony submitted by Reginald Hahn, President of R.O. Hahn, Inc., we must find that a serious question is demonstrated concerning the passage of title. Because we feel that Hahn has raised a substantial question concerning the passage of title of the goods, that Hahn has demonstrated the likelihood of irreparable injury, and that the equities of the situation favor the preservation of the status quo, we find that the circuit court abused its discretion in denying Hahn's motion for a temporary injunction.

Therefore, we have granted Hahn's motion pursuant to CR 65.07, and MDG and Louis Kastan are enjoined as set out in the first paragraph of this opinion and order.

All concur.